John A. McKENZIE, Appellant,

v.

UNITED STATES, Appellee.

No. 2507.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 11, 1960.

Decided March 29, 1960.

William J. Garber, Washington, D. C., for appellant.

Nathan J. Paulson, Asst. U. S. Atty., Washington, D. C., with whom Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Appellant was convicted of carrying a pistol without a license in violation of Code 1951, § 22–3204 (Supp. VII).[1] The sole question on appeal is whether as a *special policeman*, appointed by the Commissioners under the provisions of Code 1951, § 4–115, he was exempt from the provisions of section 22–3204, because of the provisions of Code 1951, § 22–3205, exempting from the provisions of section 22–3204 "policemen or other duly appointed law-enforcement officers." Appellant contends that under the facts and circumstances of this case he was entitled to car-

2. First National Realty Co. v. Weathers, D.C.Mun.App., 154 A.2d 548.

1. "No person shall * * * carry either openly or concealed on or about his person * * * ·a pistol, without a license therefor * * *."

ry the pistol without having secured a license, because of his status as a *special policeman*; in other words, that he was either a *policeman* or a *law-enforcement officer* and was accordingly not required to have a license to carry a pistol.

The distinction between a regular and a special policeman is clearly set forth in Klopfer v. District of Columbia, 25 App. D.C. 41. In that case, at page 44, the court in discussing the status of a special policeman said:

> " * * * [I]t is very plain that he was only a special policeman for a special purpose, and not subject to the performance of the general duties of a policeman, in the ordinary sense of that term. * * *

> " * * * He was employed for one sole purpose, that of guarding from depredation the property of those who paid him for his services. For this purpose alone, and to enable him to perform his duty in that regard, he received a commission from the District of Columbia as policeman. * * * "

The statute under which appellant was appointed (Code 1951, § 4–115) provides as follows:

> "The Commissioners of the District of Columbia, on application of any corporation or individual, or in their own discretion, may appoint special policemen for duty in connection with the property of, or under the charge of, such corporation. or individual; said special policemen to be paid wholly by the corporation or person on whose account their appointments are made, *and to be subject to such general regulations as the said commissioners may prescribe.*" (Emphasis supplied.)

Pursuant to this statute the Commissioners adopted the following regulations:

> "Sec. 7. No person appointed as a special policeman under the provisions of Section 4–115, D.C.Code of [1951], shall display a badge, a weapon, or other evidence of authority in any other place than the property of, or under the charge of, the corporation or individual upon whose account he was appointed and by whom he is paid, or, in the case of a special policeman whose commission extends to more than one person's or corporation's property, in any other place than the area or locations defined in his commission.

> "Sec. 8. Firearms or other dangerous weapons carried by a special policeman on the premises for which he holds a commission must be left on said premises when such special policeman is not actually on duty. Firearms or other dangerous weapons carried by special policemen whose commissions extend to more than one person's or corporation's property, may be carried only when such special policeman is on actual duty in the area thereof or while traveling, without deviation, immediately before and immediately after the period of actual duty, between such area and the residence of such special policeman." [2]

The facts and circumstances surrounding appellant's possession of the pistol are as follows: A member of the Metropolitan Police Department received information in the early morning of July 19, 1959, that a man was impersonating an officer in front of the Birdland Cafe. He proceeded to the cafe where he observed the appellant on the public sidewalk in conversation with someone who was seated in an automobile. The officer requested identification from the appellant and the latter opened his jacket and reached for his back pocket, at which time the officer observed that he was carrying a revolver in his holster on his belt. He was placed under arrest; he then iden-

---

**2.** Manual of the Metropolitan Police Department, ch. XXXII, §§ 7, 8.

tified himself to the officer as a special policeman. When asked why he was not in uniform, he stated he was not scheduled for duty at the Birdland Cafe but was present for the purpose of checking on two special policemen who were on duty in the cafe at that time. When appellant arrived at the police station he stated he had been a special policeman for four years and was employed at a certain investigating agency in this city; that his schedule of assignment called for him to be on duty at the Howard Theatre located in the 600 block of T Street, N.W., on July 18, 1959, from 11 p. m. until July 19 at 3 a. m. On July 17 he called the theatre from his home and was told that his services would not be needed on the evening of July 18. At about 10:30 p. m. on July 18 he left his home dressed in civilian clothes and wearing the revolver which was later found on him by the officer. He went to the Birdland Cafe and stood around to see how the other special policemen were performing their duties. While he had worked in this cafe before, he was not assigned to work there on that night. He stayed inside the cafe until it closed at midnight and then walked outside where he stood talking to the man in the automobile, when in a few minutes he was approached by the police officer.

A representative of his employer testified that appellant had been advised that his services were not needed at the theatre on July 18 and 19, and that he should have reported to his employer for possible reassignment to another establishment; that he did not so report nor was he scheduled for duty at the Birdland Cafe on July 19.

A member of the Metropolitan Police Department testified as follows: Appellant was employed by the investigating agency mentioned, and had received a commission from the Commissioners as special policeman which was in force on July 19. The Howard Theatre was in a direction south and east of the appellant's home, and that the cafe was approximately four blocks west and six blocks north of defendant's home. If the defendant traveled a straight route to his home from the Howard Theatre, he would not go past nor be in the vicinity of the Birdland Cafe. Evidence was introduced showing that appellant had never been issued a license to carry a pistol under the provisions of Code 1951, § 22–3206.

It is clear that at the time in question, appellant was not on "actual duty in the area" of either the Howard Theatre or the Birdland Cafe; nor was he "traveling, without deviation, immediately before and immediately after the period of actual duty, between [either the theatre or the cafe] and [his] residence * * *." Manual of the Metropolitan Police Department, ch. XXXII, section 8.

We hold that he was neither a *policeman* nor a *law-enforcement officer* within the meaning of section 22–3205; that his status was merely that of a special policeman subject to the conditions and limitations of Section 8 of the regulation referred to; that his actions at the time and place in question did not bring him within the rights and privileges accorded such an officer by the regulation, so that he was at the time referred to merely a private citizen and subject to the provisions of section 22–3204.

Affirmed.