**Michael SHIVERS, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**Nos. 84–123, 85–595.**

District of Columbia Court of Appeals.

Argued April 11, 1986.
Decided Nov. 16, 1987.

---

1. Cf. *United States v. Dockery,* 294 A.2d 158 (D.C.1972); *Jenkins v. United States,* 284 A.2d 460 (D.C.1971).

Mark A. Venuti, Washington, D.C., appointed by this court, for appellant.

Harriet J. McFaul, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Diane G. Clark, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, BELSON and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

A jury convicted appellant, Michael Shivers, of one charge of assault and one charge of carrying a pistol without a license.[1] Appellant argues on appeal that 1) the trial court gave an incorrect jury instruction on the pistol charge (and that in any event the evidence was insufficient to support a conviction on that charge), and 2) the trial court did not adequately instruct the jury on the requirement of a unanimous verdict for a conviction on the assault charge.[2] Since defense counsel did not object to these alleged instructional errors at trial, we will reverse only if we find plain error "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Allen v. United States*, 495 A.2d 1145, 1151 (D.C.1985) (en banc) (citation omitted). Finding no such plain error, we affirm.[3]

I

Appellant and the complaining witness, Darryl Scott, had a minor car accident in the parking lot of an apartment complex on Belview St., S.E. Scott and his cousin, Gary May, were in Scott's car, about to leave the parking lot.

A.

Scott testified that appellant's car "zoomed" around another car and hit Scott's parked car. Appellant got out of his car and approached Scott. Scott tried to get out of his car, but appellant pushed the door back against Scott's legs, and demanded that Scott pay for the damage to his car. Scott protested that appellant was the one who caused the accident, whereupon appellant hit Scott in the mouth and drew blood.

As Scott walked away to call the police, appellant continued his abusive behavior, poking Scott in the back and attempting to start a fight. After Scott telephoned the police, he returned to the parking lot to await their arrival. In the meantime, appellant parked his car and went inside the apartment building. He returned some minutes later,[4] dressed in a security guard uniform, with a holstered gun on his hip. He walked over to Scott with his hand on his gun and told Scott, "You got anything smart to say, I will take you out." Scott feared that appellant would shoot him, and began to walk away. Appellant followed Scott, poking him in the back and trying to start a fight. When Scott failed to respond, appellant went back to his own car and drove away.

May, who was with Scott throughout the incident, corroborated Scott's testimony. Francine Leake, the driver of the car appellant "zoomed" around, testified that she saw appellant's car hit Scott's car, then saw appellant confront and take a swing at Scott.

B.

Appellant, in his own defense, testified that he was a security guard for Pitman

1. *See* D.C.Code § 22–504 (1981) (assault); *id.* § 22–3204 (carrying unlicensed pistol).

2. Shivers also argues that his trial counsel was ineffective, but we find this argument meritless. Shivers has not demonstrated that he was so prejudiced as to have been deprived of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

3. Appellant also filed an appeal from the trial court's denial of his motions to vacate sentence, to set aside judgment and for a new trial. Those were not pursued on appeal and are therefore affirmed.

4. Testimony was not precise as to this interval, but it does not appear to have exceeded twenty to thirty minutes.

Security, and that he was due to work at 4 p.m. on the day of the incident. At around 3 p.m., he drove into the apartment parking lot. A woman in another car entered the lot at the same time. She stopped to allow appellant to pass. He pulled around the woman's car, and was hit by the car driven by Scott. Scott got out of the car and cursed at appellant, telling him that he was going to call the police. Appellant went to his apartment, got a piece of paper, and wrote down Scott's license tag number. Appellant waited in his car for a few more minutes, then went back to his apartment and changed into his security guard uniform. When he came back out and got in his car to go to work, he saw Scott and May standing about a block away. Appellant drove past them as he left the parking lot, but did not stop. Appellant denied assaulting Scott, either at the time of the accident, or on his way to work.

### C.

After retiring to consider the evidence, the jury came to a verdict on the assault charge, finding appellant guilty. At the same time, however, the jury indicated that it was deadlocked on the pistol charge. The trial court brought the jury into court and the jury announced its verdict on the assault charge. The court then gave the jury an instruction on the need for further deliberation. After doing so, the jury returned a guilty verdict on the pistol charge.

### II

D.C.Code § 22–3204 (1981) prohibits carrying a pistol without a license. Section 22–3204 does not apply to "policemen or other duly appointed law enforcement officers." D.C.Code § 22–3205 (1981). Appellant established that he is a special police officer appointed pursuant to D.C.Code § 4–114 (1981). He is thus entitled to carry a pistol without a license under the exception in D.C.Code § 22–3205, but "only to the extent that he acts in conformance with the regulations governing special officers." *Timus v. United States*, 406 A.2d 1269, 1272 (D.C.1979).

Metropolitan Police Department Regulations provide:

Firearms or other dangerous weapons ... may be carried only when [a] special policeman is on actual duty in the area thereof or *while traveling without deviation*, immediately before and immediately after the period of actual duty, between such area and the residence of such special policeman.

Manual of the Metropolitan Police Department, ch. XI, § 11.8 (1972) (emphasis added).

■ Under this regulation, appellant was entitled to carry his pistol while traveling to work, so long as he did not "deviate" from travel. Thus, a crucial issue was whether appellant's alleged armed confrontation with Scott, if proven, amounted to a "deviation" that would put appellant outside of the special police officer exception to § 22–3204.

No standard jury instruction exists on the deviation issue. The trial court instructed the jury as follows:

If you credit the defense's evidence that Mr. Shivers went from his house to his car with his gun and then drove straight to work, without threatening the complaining witness with his gun, then I instruct you that Mr. Shivers under our law and under the portions of this case that are not disputed, was entitled to have the weapon, and you should find him not guilty of carrying a pistol without a license.

If, on the other hand, you find that the Government's evidence is credible, and that that is what happened on that day; namely, that he, after putting his gun and uniform on, walked past his car, some distance, and threatened the complaining witness with reference to his handgun, then I instruct you that is, as a matter of law, that is a deviation from his path, proper path to and from work. He is not entitled to rely on his status as a special police officer, and if you believe that evidence ... then I instruct you that it's your duty to find the defendant guilty [of carrying a pistol without a

license], if all the other elements have been proven.

■ We find no plain error in this instruction, because we agree that the government's evidence, recited by the trial court, if credited by the jury, did establish deviation as a matter of law. The government's evidence showed that appellant, in uniform and wearing his pistol, walked a significant distance from his own car to confront and threaten Scott with his hand on the undrawn weapon. This evidence is enough to establish that appellant deviated from a normal course of travel to work, *see e.g., Timus, supra; McKenzie v. United States,* 158 A.2d 912 (D.C.1960). Thus, if the jury credited the government's evidence, appellant was not entitled to rely on the special police officer defense to carrying a pistol without a license. Accordingly, the trial court did not deprive appellant of a fair trial by instructing the jury as it did. Furthermore, the jury was presented with evidence sufficient to sustain the conviction. *Ford v. United States,* 498 A.2d 1135, 1137 (D.C.1985).

### III

Appellant's contention that the trial court's instructions to the jury may have failed to ensure a unanimous verdict is based upon the fact that the evidence adduced at trial might be viewed as showing two confrontations constituting two distinct incidents of assaultive behavior: one before Scott called the police and appellant left to change his clothes (the "first inci-

dent"), and the other after Scott and appellant returned to the parking lot (the "second incident").[5] Instructing the jury, the trial court gave the standard instructions on the elements of the offense of assault. He also stated that the jury verdict must be unanimous, but did not state that the jurors had to agree unanimously on what constituted the assault. Neither party objected to these instructions.

■ Where in a case there is evidence to show that either factually separate incidents or legally separate incidents are encompassed in a single count, the sixth amendment right to a unanimous jury entitles the defendant to a special unanimity instruction, requiring that the jury be unanimous as to which specific incident or incidents they find the defendant guilty. *Scarborough v. United States,* 522 A.2d 869 (D.C.1987) (en banc). Where a defendant does not request, or object to the omission of, such an instruction, we review on a "plain error" standard.[6] Here, our examination convinces us that the failure to give a special unanimity instruction was not "plain error" within the teaching of our jurisprudence in this area.[7]

First of all, it is not self-evident that the evidence in fact demonstrates either factually or legally separate incidents. Defendant was charged with a single count of simple assault.[8] The affair arose out of a specific single event, the car accident, and continued at the same location. In those cases where we have found factually sepa-

5. Appellant actually further reduces the confrontation into five discrete assaultive acts: (1) that appellant pushed the car door into Scott's leg, (2) that appellant punched Scott in the face, (3) that appellant pushed Scott in the back, (4) that, after returning to the parking lot, appellant threatened Scott while he had his hand on his gun, and (5) that appellant then poked Scott in the chest before driving away.

6. Unlike the situation in *Scarborough, supra,* appellant can make no compelling claim that his failure to object was based upon some apparently binding precedent.

7. The apparent prevailing practice in the federal courts is to find no "plain error" so long as evidence as to each incident is sufficiently strong to defeat a motion for a directed verdict

of not guilty as to that incident. *See United States v. Mangieri,* 224 U.S.App.D.C. 295, 304, 694 F.2d 1270, 1279 (1982); *United States v. Peterson,* 768 F.2d 64, 67–68 (2d Cir.) (Friendly, J.), *cert. denied,* 474 U.S. 923, 106 S.Ct. 257, 88 L.Ed.2d 264 (1985); *Commonwealth v. Lemar,* 22 Mass.App. 170, 492 N.E.2d 105 (1986) and cases cited. We have in our case law been somewhat more stringent.

8. As has been noted, there is a nexus between the problem of nonunanimous juries and that of so-called duplicitous indictments, *United States v. Pavloski,* 574 F.2d 933, 936 (7th Cir.1978), and the line between multiple continuing offense and multiple offenses to a single continuing offense is difficult to draw and is left, at least initially, to the discretion of the prosecutor. *United States v. Berardi,* 675 F.2d 894, 898 (7th Cir.1982).

rate events so that the failure to give a special unanimity instruction has been deemed "plain error," there has usually existed significant spatial or temporal separation. The break of less than half an hour for the change of clothes, after which the altercation resumed in the same place fueled by the same original provocation, creates far less factual severance, for example, than appears in *Johnson v. United States*, 398 A.2d 354 (D.C.1979), where the defendants first pushed a woman part-way out of a fifth-story window, then after driving the woman around town for a while, finally threw her into the Potomac River.[9] Rather, this case might be viewed as more akin to *Glymph v. United States*, 490 A.2d 1157 (D.C.1985). There, the defendant had assaulted his former girlfriend in a series of rooms in his apartment by kicking, beating, and imprisoning her in a variety of ways for more than an hour, including a number of interruptions and surceases, such as phone calls. We viewed this evidence as "not a succession of detached incidents but a continuing course of assaultive conduct," *id.* at 1160, and indeed questioned whether the acts could properly have been subdivided into separate counts.[10]

Also open here is an analysis along lines analogous to *Hack v. United States*, 445 A.2d 634 (D.C.1982). In that case, the defendant was convicted of possession of marijuana in a situation where two separate bags of the drug were recovered. An ambiguous instruction on the marijuana charge created a unanimity problem. The marijuana in one envelope, however, was treated with PCP, and defendant's conviction on the related PCP charge necessarily indicated that the jury was unanimous on the ambiguous charge. Likewise, here the conviction of the defendant on the charge of carrying a pistol without a license, given the trial court's instruction quoted *supra* that a conviction would require that the jury find that the defendant "threatened the complaining witness with reference to his handgun," indicates that the jury did find unanimously that appellant did in fact assault the complainant in that manner. *See also Scarborough, supra.* While it is true that the jury returned the guilty verdict on the assault charge before it reached a decision on the pistol charge, the eventual agreement of the jury as to the pistol charge appears to reflect unanimous agreement as to at least one of the possible bases for the assault charge. In a plain error analysis, this should be sufficient.[11]

In addition to the foregoing, we detect here no change of government theory midtrial or other indication of possible jury confusion, as existed in *Hawkins v. United States*, 434 A.2d 446 (D.C.1981). There the jury, while deliberating, sent a note to the trial judge showing it was confused about the issue, whereupon the judge gave the jury additional, but ambiguous, instructions which altered the legal theory of the case.[12]

---

9. In that case, defendants were tried on a count of assault with intent to kill. We found the recited facts to constitute two separate incidents, as to which the trial court should have given a special instruction. We did not deal with any plain error problem as the case was reversed and a new trial required for other reasons. Our closest case on its facts is *Hawkins v. United States*, 434 A.2d 446 (D.C.1981), where there were differing defenses (denial and self-defense) and other aggravating factors. *See* discussion *infra*.

10. At issue was not a unanimity instruction but rather whether an indictment of assault with a dangerous weapon encompassed only a specific assault with a baseball bat or all the various assaultive acts.

11. In fact, a review of the evidence suggests that to have agreed on the assault verdict before agreeing on the pistol charge, the jury likely would have agreed that appellant was guilty of assault in the first incident. While the evidence does not permit one to so reason with the certainty in *Hack*, it seems "difficult to imagine" that a juror would initially believe and acquit appellant of assault in the first incident (where there were three witnesses and appellant actually punched complainant and drew blood) while disbelieving and convicting appellant of assault in the second incident (where the evidence was less strong and appellant's wife supported his story). *See Scarborough, supra,* 522 A.2d at 874.

12. *See also Davis v. United States,* 448 A.2d 242 (D.C.1982) (prosecutor shifted argument between opening and closing statement and emphasized concern of jury was to determine who possessed two envelopes of marijuana obtained at different places); *Hack v. United States, supra* (defendant linked to two separate marijuana containers obtained at different locales).

In addition, in *Hawkins,* the judge gave an affirmative instruction that the jury in fact did not "have to break down the incidents," 434 A.2d at 449, which has been held reversible error under the federal practice as well. *See United States v. Gipson,* 553 F.2d 453 (5th Cir.1977) (timely objection made).

Nor do we see, as another possible source of jury confusion, a problem with distinct and sharply different defenses, as in *Scarborough, supra* (two items of allegedly stolen property; defendant asserted he bought one in a bona fide purchase and had long possessed the other as a gift from his wife); *Hawkins, supra* (two separate assaults; defendant denied first one but admitted the second, claiming self-defense); or *Johnson, supra* (testimony that intent in pushing woman halfway out window was only to scare her; no such defense to throwing her in river). Here appellant consistently denied assaulting the complainant at any time, albeit he admitted being present at the scene of the first incident and not the second.

Here, as in other determinations of "plain error" reversal, we must consider the totality of the circumstances. It is not enough to show for plain error analysis that the evidence, relevant to a single count, reveals (if indeed it did here) two or more incidents which might be sufficiently separate to warrant, if requested, a special unanimity instruction; our cases call for more.[13] We simply do not find here any aggravating element that would cause us to find that a "miscarriage of justice" occurred below. *See United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982).[14]

*Affirmed.*

---

**13.** The federal courts consider a general unanimity instruction sufficient to insure a unanimous verdict "except in cases where the complexity of the evidence or other factors create a *genuine danger* of jury confusion." *United States v. Schiff,* 801 F.2d 108, 114–15 (2d Cir. 1986), *cert. denied,* — U.S. —, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987) (emphasis added; citation omitted).

**14.** *Cf. Commonwealth v. Lemar, supra,* 492 N.E. 2d at 106, noting that the "robust intuition and good common-sense" of jurors has been trusted to apply the standard unanimity charge to circumstances where special unanimity problems lurk, citing *Vitello v. United States,* 425 F.2d 416, 422 (9th Cir.), *cert. denied,* 400 U.S. 822, 91 S.Ct. 43, 27 L.Ed.2d 50 (1970); *see* Note, *Right to Jury Unanimity on Material Fact Issues,* 91 Harv.L. Rev. 499 (1977).