James E. GRAY, Appellant,

v.

UNITED STATES, Appellee.

No. 87–282.

District of Columbia Court of Appeals.

Argued April 19, 1988.
Decided July 13, 1988.

Kenneth B. Nunn, Public Defender Service, pro hac vice, with whom James Klein, Scott W. Howe, and Jennifer P. Lyman, Public Defender Service, were on the brief, for appellant.

Teresa L. McHenry, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at the time the brief was filed, and Michael W. Farrell, Elizabeth Trosman, and Terrence J. Keeney, Asst. U.S. Attys., were on the brief, for appellee.

Before MACK, BELSON, and TERRY, Associate Judges.

BELSON, Associate Judge:

Appellant was convicted of one count of rape in violation of D.C.Code § 22–2801 (1981). On appeal, he contends that his conviction should be overturned because the trial court failed to instruct the jury, *sua sponte,* that it must reach unanimity with respect to the particular set of facts that constituted the rape. Finding no plain error in the court's failure to give a special unanimity instruction, we affirm.

Appellant was indicted on two counts of rape and one count of sodomy, all relating to a set of events that occurred at about 10:00 on the evening of November 10, 1985. The record does not disclose which set of facts formed the basis for each rape count of the indictment. Prior to trial, however, the government successfully sought the dismissal of one of the rape counts.[1]

The government introduced evidence that earlier that evening, the complainant had encountered appellant, a casual acquaintance, conversing with some others outside a liquor store in their neighborhood. After the two exchanged greetings, the complainant agreed to accompany appellant to his sister's house, where they, some other rela-

---

1. The record before us does not reflect the grounds on which the government sought dis-    missal.

tives, and a family friend named Rico smoked some marijuana purchased with appellant's money. When the group split up, appellant and the complainant walked around the neighborhood for a while, then stopped to smoke some more marijuana. As the complainant started to smoke the joint appellant offered, appellant tried to kiss her and put his hand up her skirt. The complainant rebuffed him, saying she would not make love to him in the street like that, and told him she was leaving to go to her cousin's apartment. Appellant replied that he would walk with her. As a shortcut, the complainant chose a path that traversed Kenilworth Park.

Less than a minute after they had started down the path, appellant grabbed the complainant and informed her that she was going to repay the favor of sharing his marijuana by having sexual intercourse with him. Dragging the complainant a short distance off the path, appellant pushed her down, tore off her stockings and underwear, and penetrated her sexual organ with his. He then decided to drag her deeper into the park. Once they were approximately 40 to 45 feet from the path, appellant resumed sexual intercourse, then stopped to get the complainant a cigarette at her request. Hoping to burn appellant with the cigarette and thus escape, the complainant testified that she placed the lit cigarette on the ground at her side. When appellant lay down on it, he became angry and demanded that the complainant engage in fellatio. Before the sodomy commenced, they were interrupted by the approach of two men on the path. Although the men stopped for 45 seconds to one minute, they did not leave the path to investigate what was happening before moving on. After the men left and without moving from that spot, appellant forced the complainant to engage in fellatio and then resumed vaginal intercourse. Thereafter, appellant reached a climax, the only time this oc-

curred so far as the record shows. The complainant then got up, grabbed appellant's pants, and fled. Appellant gave chase and retrieved his pants, but the complainant escaped. Subsequent medical examination revealed no semen in the complainant's mouth, but the tests did show semen in her vagina and on her clothing. Tests to identify blood type from the semen were inconclusive.

Appellant advanced an alibi defense and argued that on the evening in question the complainant engaged in consensual sexual intercourse not with him but with somebody else. A friend of appellant's testified that she had driven appellant to a concert in Maryland earlier that evening. A neighbor testified that she had seen the complainant with Rico that night, not with appellant. In closing arguments, appellant's attorney expressed the theory that the complainant had fabricated the charge of rape and had named appellant as the perpetrator because of her fear that her boyfriend, as well as appellant's niece, who had been dating Rico, would learn that she had consented to sexual intercourse with Rico.

The court instructed the jury that its verdict must be unanimous, but did not instruct it that it must unanimously agree that a particular act or acts constituted the rape.[2] Appellant's counsel did not object to the instructions that were given. After two days of deliberations, the jury returned a verdict of guilty on the single rape count presented to it, but not guilty on the sodomy count.

Appellant contends that the trial court committed plain error, *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc), when it failed to give, *sua sponte*, a special unanimity instruction charging the jurors that they must agree on the particular set of facts that constituted the rape. Appellant would apply the so-called "two-incidents" test here, contending that there

2. The court instructed the jury as follows:
   Any verdicts that you return must be unanimous. That means everybody has to agree to it. In that regard, let me advise you of something that often happens when a jury returns a verdict, and I don't want you to be surprised about it. Since you have to be unanimous in your verdict when you return it, either side has the right, if they wish, to ask me to have the jury polled, make sure that everybody does agree with the verdict.

were three conceptually severable rape episodes: (1) near the path, (2) at a different location farther away from the path, and (3) after the approach of the men and the sodomy had taken place. Appellant argues that not only was each "episode," separated by an evidentiary factor such as time, place, or intervening circumstance, but that each episode independently encompassed the elements of rape, *i.e.*, sexual penetration of the victim forcibly and against her will. *See Ballard v. United States*, 430 A.2d 483, 485 (D.C.1981); *Smothers v. United States*, 403 A.2d 306, 312 (D.C. 1979). The result, according to appellant, was that some jurors could have concluded that whatever occurred before the men passed by was consensual, but that the complainant thereafter withdrew her consent because she feared disclosure. Other jurors, appellant maintains, could have doubted her account of the final rape, as shown by the rejection of the sodomy charge.

"The Sixth Amendment gives to a defendant the right to have his fate decided by a unanimous verdict." *Owens v. United States*, 497 A.2d 1086, 1092 (D.C.1985) (citing *Andres v. United States*, 333 U.S. 740, 748, 68 S.Ct. 880, 884, 92 L.Ed. 1055 (1948)), *cert. denied*, 474 U.S. 1085, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986); *accord, Shivers v. United States*, 533 A.2d 258, 261 (D.C.1987); *Scarborough v. United States*, 522 A.2d 869, 872 (D.C.1987) (en banc). This is deemed an indispensable feature of the right to trial by jury. *Id.* Superior Court Criminal Rule 31(a) expressly requires a unanimous verdict. The unanimity rule " 'requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged.' " *Scarborough, supra*, 522 A.2d at 873 (quoting *United States v. Gipson*, 553 F.2d 453, 457–58 (5th Cir. 1977)). Thus, if a single count encompasses two or more factually or legally separate incidents, the trial court is required to instruct the jury that it must reach unanimous agreement as to the incident or incidents upon which its verdict is based. *Shivers, supra*, 533 A.2d at 261; *Owens,*

*supra*, 497 A.2d at 1093; *Hack v. United States*, 445 A.2d 634, 641 (D.C.1982); *Hawkins v. United States*, 434 A.2d 446, 449 (D.C.1981).

Incidents have been found to be *factually* separate when separate criminal acts have occurred at different times and were separated by intervening events, *see, e.g., Johnson v. United States*, 398 A.2d 354, 370 (D.C.1979) (conviction of assault with intent to kill could have been based on an incident in which the victim was pushed halfway out an apartment house window or on an incident an hour or two later, after several other criminal and noncriminal events intervened, in which the same victim was thrown into the Potomac River); when they occurred at different places, *see, e.g., Hack, supra*, 445 A.2d at 641 (evidence showed appellant possessed two separate bags of marijuana, one tossed into a storm drain and the other found in a police car where he had been riding, but error deemed harmless since unanimity was demonstrated by verdict on other count); when the defendant has reached a fork in the road and has decided to invade a different interest, *see, e.g., Owens, supra*, 497 A.2d at 1096–97 (attempted robbery and subsequent shooting of the victim when he fled were two separate offenses); or when the first act has come to an end and the next act is motivated by a fresh impulse, *see, e.g. Blockburger v. United States*, 284 U.S. 299, 303, 52 S.Ct. 180, 181, 76 L.Ed. 306 (1932) (separate sales of morphine to the same person).

Incidents are *legally* separate when the appellant presents different defenses to separate sets of facts underlying the charge, *see, e.g., Horton v. United States*, 541 A.2d 604, 611 (D.C.1988) (of two shots allegedly fired, appellant denied firing the first, but claimed he fired latter in self-defense); *Scarborough, supra*, 522 A.2d at 873–74 (separate defenses presented as to two classes of stolen property, but error harmless because of minimal possibility of prejudice), or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents, *see, e.g., Hawkins, supra,*

434 A.2d at 449 (error for court to reinstruct the jury, after deliberations had begun, that it could find either a simple assault, as charged, or a series of assaults, but that it did not have to "break down the incidents"). *See also Davis v. United States,* 448 A.2d 242, 243–44 (D.C.1982) (per curiam) (prosecutor in opening statement explained that the evidence would show recovery of two bags of marijuana from the front seat of a taxicab, while the evidence actually presented and summarized in closing argument showed only one bag recovered from the cab but another found in a police transport vehicle; shift in government's theory required special instruction). *But see Tyler v. United States,* 495 A.2d 1180, 1182 (D.C.1985) (unnecessary for jury to agree whether defendant was an aider and abettor or a principal in commission of single criminal act); *Burrell v. United States,* 455 A.2d 1373, 1379–80 (D.C.1983) (no special instruction required when government and defense each present a different version or theory of a single incident).

It is also true that the nature of the crime alleged may be important to the determination of whether a "separately cognizable incident," *Scarborough, supra,* 522 A.2d at 873, is at issue. In *Owens, supra,* we stated:

> Some crimes, by their very nature, tend to be committed in a single continuous episode rather than in a series of individually chargeable acts. An ordinary assault, for example—that is, an assault that is not accompanied by an intent to commit another offense—is usually such a crime. "The fact that a criminal episode of assault involves several blows or wounds, and different methods of administration, does not convert it into a case of multiple crimes for purposes of sentencing."

497 A.2d at 1096 (quoting *Smith v. United States,* 135 U.S.App.D.C. 284, 285, 418 F.2d 1120, 1121, *cert. denied,* 396 U.S. 936, 90 S.Ct. 280, 24 L.Ed.2d 235 (1969)).

■ However, when a single count is charged and the facts show a continuing course of conduct, rather than a succession of clearly detached incidents, a special unanimity instruction is unnecessary, absent some factor that differentiates the facts on legal grounds. A continuing course of conduct may be found even though there has been some spatial or temporal separation between assaultive acts, *see Shivers, supra,* 533 A.2d 261–62, or interruption by outsiders or actions by the participants themselves, *see Glymph v. United States,* 490 A.2d 1157, 1158–59 (D.C.1985) (series of beatings, kickings, and shovings, interrupted by telephone calls and movement back and forth between living room, bedroom, and closet, comprised a single charge of assault with a dangerous weapon). In *Shivers, supra,* the appellant was involved in a minor automobile accident in a parking lot adjacent to his apartment building. After the collision, the appellant approached the driver of the other car, pinned that driver's legs in his car door, punched him in the mouth and, when the other driver sought to walk away, poked him in the back. 533 A.2d at 259. The appellant then went inside the building to change his clothes. Some twenty to thirty minutes later, the appellant emerged wearing a security guard's uniform and carrying a gun. After challenging the other driver to a fight, appellant again poked the driver in the back before getting into his car and driving away. *Id.* We observed that "[t]he break of less than half an hour for the change of clothes, after which the altercation resumed in the same place fueled by the same original provocation, creates far less factual severance, for example, than appears in *Johnson v. United States,* 398 A.2d 354 (D.C.1979)." *Id.* at 262.

■ We conclude that the "incidents" here were neither factually nor legally separable. This rape, like many assaults, was committed in a continuous course of conduct. There was no significant break between the events. Although appellant and the complainant moved a short distance between the first two acts of sexual intercourse, and all three acts necessarily were separated by a few minutes, these short spatial and temporal separations were not enough to transform a single course of action into several separate rapes. Similar-

ly, the interruptions between the second and third acts of intercourse did not terminate appellant's original intent to have and complete sexual intercourse against the will of the complainant.

Furthermore, in trying the case neither appellant nor the government treated the acts of intercourse as legally separable. The Government consistently treated the various acts as constituting a single rape.[3] Appellant presented the same defenses to the entire series of acts. Thus, the jury was not called upon to consider or analyze each act separately. No shift in legal theories occurred, nor was there any other factor that would have tended to cause jury confusion. Appellant's hypothesis that some of the jurors may have considered the first two instances of sexual intercourse consensual and thus not part of a rape, while others may have decided the final instance did not occur, is mere speculation without basis in the affirmative evidence or any theory introduced by the defense.

Other jurisdictions have found only a single course of conduct in similar instances. *See Turnbow v. State,* 451 P.2d 387 (Okla. Crim.App.1969) (no error to incorporate into a single charge two acts of intercourse that occurred within minutes of each other but were separated by an act of oral sodomy); *State v. Bailey,* 144 Vt. 86, 475 A.2d 1045 (1984) (upon unanimity challenge, held not plain error to include under a single count of rape at least six separate acts of

intercourse occurring within a span of one and one-half hours in the defendant's apartment); *see also People v. Mota,* 115 Cal.App.3d 227, 171 Cal.Rptr. 212 (1981) (repeated acts of intercourse during a one-hour gang rape were part of a single continuous offense); *Williams v. State,* 721 P.2d 1318 (Okla.Crim.App.1986) (single rape charge upheld for two acts of penetration); *Steele v. State,* 523 S.W.2d 685 (Tex.Crim.App.1975) (two acts of intercourse, one occurring in the complainant's car and the other in her bedroom, were part of the same criminal transaction occasioned by continuous use of force and threats); *Bethune v. State,* 363 S.W.2d 462 (Tex.Crim.App.1962) (no election required where evidence showed several acts of intercourse occurring in the same bed on the same night).[4]

Accordingly, we hold that the trial court did not commit plain error when it failed, *sua sponte,* to give a special unanimity instruction.

*Affirmed.*

---

**3.** Appellant contends that during closing argument the prosecutor referred to the acts of intercourse as three separate episodes of rape. The record refutes this assertion. The prosecutor stated:

> So he takes her in there [the woods], and that is where the assault, the rape begins....
> ....
> The force with which James Gray began this rape is shown in this photograph. And then it begins. He puts his penis into her vagina. She resists....
> And then, after he enters once, they move. He puts his penis into her vagina; then he moves her somewhere else, over here. And he begins having sex with her. But this time, during the course of that act, somebody comes by....
> ....
> After he had sodomized her, Mr. Gray then placed her kind of on the hill there, ... and Mr. Gray is getting a little bit more relaxed

about his sexual actions, but he keeps—but he keeps pushing and pushing and pushing her, and pushing her up the hill. Finally he climaxes....

**4.** *Lillard v. State,* 528 S.W.2d 207 (Tenn.Crim. App.1975), is distinguishable from this line of cases. Lillard used a ruse to get two women to accompany him in his car to an isolated area. He raped one. Then, while he was raping the second, the first assaulted him with a rock, and an altercation between Lillard and his first victim ensued. After he left his first victim lying in the road, Lillard drove his second victim to a different location and raped her again. On appeal, Lillard did not contend that only a single rape had occurred, but argued, unsuccessfully, for a ruling that concurrent sentences were required. The court disagreed, holding that Lillard accomplished the second rape of his second victim with a new intent to rape.