IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0504-04






THANH CUONG NGO, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE ELEVENTH COURT OF APPEALS


HARRIS COUNTY





 Hervey, J., filed a dissenting opinion in which Keasler, J., joined.


DISSENTING OPINION 




 I respectfully dissent. In this case, a jury unanimously convicted appellant of a single credit
card abuse offense. The Court decides that appellant's state constitutional right to a unanimous jury
verdict was violated because the jury's unanimous guilty verdict could have been based on a split
vote. The State alleged, in three separate paragraphs, three separate acts, that could have been
charged as three separate offenses. See Ngo v. State, S.W.3d slip op. at 1-2 (Tex.Cr.App. No.
PD-0504-04, delivered this date) (three application paragraphs in jury charge permitted jury to
convict appellant if some of the jurors found that he stole the credit card, others believed he received
a stolen credit card, and still others thought that he fraudulently presented it).

 This scenario implicates the Supreme Court's decision in Schad v. Arizona (1) and this Court's
decision in Francis v. State. (2) It does not, however, implicate appellant's state constitutional right
to a unanimous jury verdict. Rather, it implicates the "permissible [due process] limits in defining
criminal conduct, as reflected in the instructions to jurors applying the [application paragraphs], not
one of jury unanimity." See Schad, 501 U.S. at 631. (3) And, it would appear that (even though all
three acts in the application paragraphs are morally equivalent), (4) those permissible due process limits
may have been exceeded in this case (5) unless the jury was instructed that it had to unanimously agree
on at least one of the application paragraphs before it could convict appellant.

 The Court decides that this could have been accomplished by inserting the word
"unanimously" into each application paragraph. See Ngo, slip op. at 17 (application paragraphs
would have been correct had each paragraph included the word "unanimously"). But, the charge
instructed the jury that it had to unanimously agree on a verdict. (6) This instruction with each
application paragraph submitted in the disjunctive accomplished instructing the jury that it had to
unanimously agree on at least one of the application paragraphs before it could convict appellant.

 In addition, the three application paragraphs arising from one offense are what distinguishes
this case from Francis which involved a single application paragraph authorizing the defendant's
conviction for indecency with a child if the jury found that the defendant touched the victim's "breast
or genitals" which the evidence showed "referred to two offenses that were committed in two
separate incidents." See Francis, 36 S.W.3d at 121 (Womack, J., concurring). The single
application paragraph presenting two separate offenses in Francis presented a risk that the defendant
could have been convicted on either of these two separate offenses submitted in that single
application paragraph even though the jury was not unanimous. See id. This case does not present
that situation.

 Here, appellant failed to alert the trial court to his unanimous jury verdict claim. He also
failed to object to any statements by the prosecution and the trial court during voir dire on this
subject. This should not entitle appellant to a harm analysis that seeks to determine whether "the
jury was, in fact, unanimous in finding appellant guilty of one specific credit card abuse case." See
Ngo, slip op. at 21 (deciding that appellant was "egregiously harmed" because it cannot be
determined whether jury unanimously agreed on one of the application paragraphs). This is the type
of harm analysis that should apply had appellant timely objected to the charge and given the trial
court an opportunity to correct any error in the charge. See Almanza v. State, 686 S.W.2d 157, 171
(Tex.Cr.App. 1984) (op on reh'g) ("some harm" analysis applies to jury charge error that is subject
to timely objection, "egregious harm" analysis applies to jury charge error that is not subject to
timely objection); Posey v. State, 966 S.W.2d 57, 60 (Tex.Cr.App. 1998) (discussing reasons for
requiring a party to timely object).

 Both harm standards set out in Almanza require that "the actual degree of harm must be
assayed in light of the entire jury charge, the state of the evidence, including the contested issues and
weight of probative evidence, the argument of counsel and any other relevant information by the
record of the trial as a whole." See id.; Posey, 966 S.W.2d at 60 n.3. Applying this analytical
framework to this case, it is evident that the jury did not believe appellant's testimony that someone
named "Mike" gave him the credit cards or that, in direct conflict with the bar manager's testimony,
appellant did not attempt to use any of these credit cards to buy beer. See Ngo, slip op. at 3-4. Had
the jury believed appellant, it would have acquitted him. At the very least then, the record in this
case shows that the jury had to have believed that appellant attempted to buy beer with a credit card
that did not belong to him (which is covered by the third application paragraph). See id. 

 Based on this state of the record, I would decide that appellant was not "egregiously harmed"
by any error in the charge because the jury could have given effect to appellant's defense and
acquitted him under the instructions given, and the evidence is sufficient to support at least the third
application paragraph. Cf. Gonzalez v. State, 8 S.W.3d 640, 641 (Tex.Cr.App. 2000) (general
substantive constitutional rule is that "a general verdict [is] valid so long as it [is] legally supportable
on one of the submitted grounds-even though that [gives] no assurance that a valid ground, rather
than an invalid one, [is] actually the basis for the jury's action"). This is how I would apply the harm
analysis in this case where appellant may have helped lead the trial court into error when he
affirmatively stated that he had no objection to the charge.

 In footnote 52 of its opinion, the Court cites a District of Columbia Court of Appeals case 
to support its decision that the lack of a special unanimity instruction constituted egregious harm. 
See Ngo, slip op. at 22 n.52 citing Horton v. United States, 541 A.2d 604 (D.C.Ct.App. 1988). 
Horton applied a "plain error" harm analysis to unpreserved error in the failure to submit a special
unanimity instruction. See Horton, 541 A.2d at 611 (unpreserved jury charge error requires reversal
only upon "a showing of plain error, that is, error so clearly prejudicial to substantial rights of the
defendant as to jeopardize the very fairness and integrity of the trial").

 Horton, however, is distinguishable from this case in several important respects. Horton
involved three separate convictions (where it was possible that the jury may not have been
unanimous on any one of these convictions) while this case involves only one conviction. See
Horton, 541 A.2d at 605-06. Horton also involved an element of juror confusion inherent in
separate defenses to separate alleged acts. See Horton, 541 A.2d at 606-08, 611 (right to unanimous
jury clearly prejudiced by confusion inherent in separate defenses to separate gunshots). This case
essentially involves one defense (appellant received from "Mike" a credit card which appellant
never used) applicable to all three application paragraphs. See Shivers v. United States, 533 A.2d
258, 263 (D.C.Ct.App. 1987) (distinguishing situation in Horton on this basis and not finding, as
another possible source of jury confusion, a problem with distinct and sharply different defenses).

 Shivers also notes that the District of Columbia practice is "somewhat more stringent" than
the "apparent prevailing [plain error] practice in the federal courts." See Shivers, 533 A.2d at 261
n7, and at 263 n.13. According to Shivers, the apparent prevailing practice in the federal courts "is
to find no 'plain error' so long as evidence as to each incident is sufficiently strong to defeat a
motion for a directed verdict of not guilty as to that incident." See Shivers, 533 A.2d at 261 n.7. 
Also, according to Shivers, the "federal courts consider a general unanimity instruction [such as the
one in this case] sufficient to insure a unanimous verdict 'except in cases where the complexity of
the evidence or other factors create a genuine danger of jury confusion.'" See Shivers, 533 A.2d at
263 n. 13. This relatively simple case did not create a genuine danger of jury confusion.

 I respectfully dissent.

 Hervey, J.


Filed: March 16, 2005

Publish
1. 501 U.S. 624 (1991).
2. 36 S.W.3d 121 (Tex.Cr.App. 2000).
3. In Schad, 501 U.S. at 630-31, the Supreme Court described the issue in the following
manner:


 Petitioner's first contention is that his [first-degree murder] conviction under
instructions that did not require the jury to agree on one of the alternative theories of
premeditated and felony murder is unconstitutional. [Footnote omitted]. He urges
us to decide this case by holding that the Sixth, Eighth, and Fourteenth Amendments
require a unanimous jury in state capital cases, as distinct from those where lesser
penalties are imposed. [Citations omitted]. We decline to do so, however, because
the suggested reasoning would beg the question raised. Even assuming a requirement
of jury unanimity arguendo, that assumption would fail to address the issue of what
the jury must be unanimous about. Petitioner's jury was unanimous in deciding that
the State had proved what, under state law, it had to prove: that petitioner murdered
either with premeditation or in the course of committing a robbery. The question still
remains whether it was constitutionally acceptable to permit the jurors to reach one
verdict based on any combination of the alternative findings. If it was, then the jury
was unanimous in reaching the verdict, and petitioner's proposed unanimity rule
would not help him. If it was not, and the jurors may not combine findings of
premeditated and felony murder, then petitioner's conviction will fall even without
his proposed rule, because the instructions allowed for the forbidden combination.


 In other words, petitioner's real challenge is to Arizona's characterization of first-degree murder as a single crime as to which a verdict need not be limited to any one
statutory alternative, as against which he argues that premeditated murder and felony
murder are separate crimes as to which the jury must return separate verdicts. The
issue in this case, then, is one of the permissible limits in defining criminal conduct,
as reflected in the instructions to jurors applying the definitions, not one of jury
unanimity. 
4. See Schad, 501 U.S. at 643-45 ("moral disparity" between different means in jury charge to
satisfy mens rea element of single offense could present federal constitutional due process violation). 
5. See Schad, 501 U.S. at 651 (Scalia, J., concurring) (due process would not permit "an
indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday, despite
the 'moral equivalence' of those two acts"); Ngo, slip op. at 9 n.22; Francis, 36 S.W.3d at 125 (jury
charge permitted conviction for an offense based on separate acts at different times).
6. The jury charge stated:


 After you retire to the jury room, you should select one of your members as your
Foreman. It is his or her duty to preside at your deliberations, vote with you, and
when you have unanimously agreed upon a verdict, to certify to your verdict by using
the appropriate form attached hereto and signing the same as Foreman.