**Bachar YOUSSEF, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 10–CF–642.**

District of Columbia Court of Appeals.

Submitted May 19, 2011.

Decided Sept. 8, 2011.

Christine Pembroke, Washington, DC, appointed by the court, was on the brief, for appellant.

Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, John P. Mannarino, Anthony Saler, and Ann K.H. Simon, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE–RIGSBY, Associate Judge, REID, Associate Judge, Retired, and BELSON, Senior Judge.

BELSON, Senior Judge:

Appellant Bachar Youssef was convicted

of first-degree fraud[1] and first-degree theft[2] following a three-day jury trial. On appeal, he contends his charges merge under the Double Jeopardy Clause and that the trial court plainly erred by failing to provide, *sua sponte*, a unanimity instruction for both of his charges. We affirm.

## I.

From September 7 through 13, 2007, appellant engaged in a series of transactions, which in the aggregate allowed him to overdraw approximately $16,000 from his Chevy Chase Bank account. During this one-week period, appellant wrote sixteen checks, payable to himself, from accounts he owned at Discover, PNC Bank and Wachovia Bank. Appellant's balances and lines of credit at these institutions were insufficient to satisfy the checks.[3] Nevertheless, appellant deposited the checks into his Chevy Chase account at various locations throughout the District of Columbia.

Appellant's Chevy Chase account balance became artificially inflated due to the bad checks because Chevy Chase followed the practice of advancing credit to a patron's account for deposits that had not yet cleared. This enabled appellant to make twenty-nine withdrawals from his Chevy Chase account throughout the one-week period and withdraw thousands of dollars

beyond the $358.10 balance and $2,500 line of credit he actually maintained at that bank.[4] When interviewed by a Secret Service Agent two months later, appellant acknowledged that he had "messed up" and admitted to gambling the money at Atlantic City.[5]

On July 29, 2009, appellant was indicted for first-degree fraud, second-degree theft and eleven counts of first-degree theft. The fraud charge was predicated upon appellant's overarching scheme or systematic course of conduct throughout the entire week, while his various first-degree theft counts were premised upon appellant's individual withdrawals of over $250. The indictment specified neither the precise time nor the amount of appellant's incriminating withdrawals. It distinguished each first-degree theft count only by listing the particular day on which the withdrawal occurred. Thus, because appellant made multiple withdrawals of over $250 on certain days, some of his first-degree theft counts were indistinguishable from others on the face of the indictment.

The trial court noted this problem on the first day of trial and questioned whether the identical counts of first-degree theft would cause juror confusion or require a special unanimity instruction. The trial court then suggested that the indictment

---

1. D.C.Code § 22–3221 (2001).

2. D.C.Code § 22–3211 (2001).

3. PNC had closed appellant's checking account with a negative balance of $587.87 four months before the transactions in question took place. Appellant maintained a negative balance at Wachovia and was $18 dollars short of reaching his $2,000 credit limit at Discover days before he issued the bad checks.

4. These withdrawals were made sporadically at all hours of the day, oftentimes caught on camera. For instance, at approximately 3:34 a.m. on September 12, 2007, appellant made

two ATM withdrawals from his Chevy Chase account for $500 and $300, successively. Approximately ten minutes later at the same ATM, appellant deposited a bad Wachovia check for $1,500 into his Chevy Chase account.

5. At trial, appellant took the stand and claimed he acted under the mistaken belief that Discover, PNC and Wachovia would extend him credit to cover the checks. He also asserted that he was expecting a wire transfer of $5,900 from his brother into his Wachovia account before he wrote the checks.

be amended to allege only one count of first-degree theft per day on the theory that each first-degree theft count would represent "one series of transactions constituting a theft for that day." When asked to comment, defense counsel stated, "I would like one count for all the [t]hefts and that's my preference. My second preference would be one count per day." While entertaining these options, the trial court advised defense counsel that what the prosecutor "doesn't want . . . is an objection by you that if it's just one count per day or one count overall, that there's a unanimity objection from you. . . ." Defense counsel indicated that she understood, saying "That's right."

After further discussions, defense counsel stated that if the indictment was not amended, "the Government [would] have [to] start specifying checks and withdrawals[,]" but indicated this would not be necessary if the indictment alleged only one first-degree theft count per day. After considering the unanimity issues, defense counsel stated, "I don't see how either this Defense Counsel or some other appellate counsel in the event of conviction [could raise a question regarding unanimity], if you reduce it by day and there's sufficient evidence. . . . But I don't think there could be a question of unanimity . . . if we do it by day."

That evening, the parties engaged in an e-mail exchange, in which they apparently agreed upon an amendment to the indictment.[6] The following day, the government stated that it would amend the indictment so that it alleged only one count of first-degree fraud and one count of first-degree theft, predicated upon appellant's transactions from September 7 to the 13. Defense counsel expressly noted that she did not object to this proposed amendment.

When the government rested its case-in-chief later that day, defense counsel moved to have the government "elect between" proceeding on either the fraud or the theft count under Double Jeopardy principles. In so moving, defense counsel argued that the new theory of theft effectively made it a scheme, which rendered it substantively identical to appellant's first-degree fraud charge. This motion was denied and the trial proceeded. Later that day, the government formally moved to amend the indictment as agreed, and defense counsel again stated that she had no objection. Thereafter, the trial court formally accepted the amendment.

On the final day of trial, the trial court gave the jury instructions on the elements of first-degree fraud and first-degree theft, to which defense counsel offered no objection. The trial court also provided a general unanimity instruction, informing the jury that "The verdict must represent the considered judgment of each juror. In order to return a verdict, each juror mu[st] agree to the verdict. The verdict must be unanimous." As the jury retired to deliberate, defense counsel alerted the court of a scrivener's error on the verdict form, pointing out that it should read that the theft allegedly occurred from September 7 to 13, rather than 8 to 13. The trial court noted this error and revised the verdict form so that it read: "As to the charge of theft of property of $250 or more on September 7, 2007 through September 13, 2007, from Chevy Chase Bank, how do you find the defendant"?

The jury returned a verdict that same day, convicting appellant of fraud and theft. Appellant was sentenced to two concurrent terms of one-year imprisonment with eight months suspended, eighteen months of supervised probation, and

---

6. These e-mails have not been included in the record.

was ordered to pay $12,586.82 in restitution.

## II.

 Appellant contends that the trial court erroneously imposed successive punishments for the same criminal offense in violation of the Double Jeopardy Clause. Appellant argues that because the amended indictment and verdict form accused appellant of fraud and theft from September 7 through September 13, he was, in effect, twice punished for engaging in a single scheme or systematic course of conduct. Because defense counsel articulated this claim at trial, we will assume, *arguendo,* that appellant did not foreclose it by agreeing to an amendment to the indictment.

 "The Double Jeopardy Clause of the Fifth Amendment prohibits a second prosecution for a single crime, and it protects the defendant against multiple punishments for the same offense." *Ellison v. United States,* 919 A.2d 612, 614 (D.C. 2007) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). However, insofar as it applies to the latter "problem of multiple punishments imposed following a single trial, [the Double Jeopardy Clause] limits only the authority of courts and prosecutors." (*Lindbergh*) *Byrd v. United States,* 598 A.2d 386, 388 (D.C.1991) (en banc); *see also Albernaz v. United States,* 450 U.S. 333, 334, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). Thus, where the "legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger,*[7] a court's task of statutory construction is at an end and the prosecutor may seek and the ... jury may impose cumulative punishment

under such statutes in a single trial." *Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

D.C.Code § 22–3203(a) (2011 Supp.) provides, "[a] person may be convicted of any combination of theft, identity theft, fraud, [and] credit card fraud ... for the same act or course of conduct; provided, that no person shall be *consecutively sentenced* for any such combination or combinations that arise from the same act or course of conduct" (emphasis added). Here, the trial court imposed concurrent sentences for appellant's fraud and theft convictions in full compliance with this statute. Therefore, regardless of whether separate convictions and separate concurrent punishments were imposed for the same systematic course of conduct, our inquiry is at an end because the Council of the District of Columbia has clearly expressed its intention to allow such convictions and punishments for combined acts of fraud and theft. *See Sutton v. United States,* 988 A.2d 478, 491 (D.C.2010).

## III.

 Next, appellant argues that the trial court erred by failing to provide, *sua sponte,* a special unanimity instruction for appellant's fraud and theft charges. At the threshold, however, we consider whether this claim is procedurally barred because appellant actively proposed and took part in devising the amendment that created this asserted infirmity. "We have repeatedly held that a defendant may not take one position at trial and a contradictory position on appeal." *Gilchrist v. United States,* 954 A.2d 1006, 1013 (D.C.2008) (quoting *Brown v. United States,* 627 A.2d 499, 508 (D.C.1993)); *accord,* (*Eugene*) *Byrd v. United States,* 502 A.2d 451, 453 (D.C.1985).

---

**7.** *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

At trial, defense counsel was the first to propose an indictment alleging only "one count for all the [t]hefts." Thereafter, the trial court expressly suggested to defense counsel that the government might be concerned that it would encounter a unanimity objection should the indictment allege "just one count per day *or one count overall.*" (Emphasis added.) Discussing an amendment that would allege only one count of theft per day rather than one count overall, defense counsel said, "[n]either this Defense Counsel or some other appellate counsel in the event of conviction" could raise a unanimity challenge over the amendment.

While the government argues with some force that appellant should be barred from arguing on appeal that the trial court erred by not, *sua sponte,* giving the jury a special unanimity instruction, we are not convinced that we should base the outcome of this appeal on a holding that appellant was thus barred. Although defense counsel stated at trial that collapsing all of the transactions that were related to a single day into one count would not create a unanimity issue, she did not specifically say the same about collapsing all of the transactions over the entire seven-day period into one count. As appellant's reply brief points out, "transform[ing] twelve theft counts into one count ... increas[ed] the number of transactions that might (or might not) be relied upon by any one juror

to show theft [and] increased the risk of a non-unanimous jury verdict...."

 It does not, however, avail appellant to be allowed to argue that a special unanimity instruction was called for, because appellant cannot establish that the failure to give a special unanimity instruction, *sua sponte,* constituted plain error. *See, e.g., Comford v. United States,* 947 A.2d 1181, 1189–90 (D.C.2008); [8] *Shivers v. United States,* 533 A.2d 258, 261 (D.C. 1987) ("Where a defendant does not request, or object to the omission of, such an instruction, we review on a 'plain error' standard."). Indeed, we perceive no error at all, much less plain error, in the failure to provide the instruction with respect to appellant's fraud charge. The Supreme Court has firmly established, and we have been guided by, the proposition that a "jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Richardson v. United States,* 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999); *accord, Williams v. United States,* 981 A.2d 1224, 1229 (D.C. 2009).

To convict for fraud, the jury had to conclude that appellant engaged in "a scheme or systematic course of conduct" composed of at least two acts calculated to

---

**8.** In *Comford,* 947 A.2d at 1189–90, we stated:

"[This Court] will reverse a conviction for error not complained of below only in an extreme situation in which the defendant's substantial rights were so clearly prejudiced that the very fairness and integrity of the trial was jeopardized." Under the established four-part test for plain error, an appellant must demonstrate not merely that there was an error, but also that the error was "clear" or "obvious"—"so egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite

the defendant's failure to object." In addition, the appellant must demonstrate that the error affected his substantial rights by showing a reasonable probability that it had a prejudicial effect on the outcome of his trial. Lastly, even if the appellant succeeds in those demonstrations, he also must show that the error seriously affected the fairness, integrity or public reputation of the judicial proceeding.

*Id.* (internal citations omitted); *see also United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

deceive, cheat or falsely obtain property. *See* D.C.Code § 22–3221; *see also* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 5.200 (5th ed. rev. 2010) (the "Redbook"). The jury, however, was not required to decide unanimously upon which of appellant's deposits, withdrawals and balance inquiries that took place from September 7 to 13 constituted the scheme, since these acts embodied merely the "brute facts" underlying the statutory element. *See Richardson*, 526 U.S. at 817, 119 S.Ct. 1707; *see also Schad v. Arizona*, 501 U.S. 624, 629, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). Thus, as articulated by the D.C. Circuit, "a count charging a series of similar acts in furtherance of a fraudulent scheme falls into a single conceptual grouping that does not require a special unanimity instruction." *United States v. Sayan*, 296 U.S.App.D.C. 319, 329–30, 968 F.2d 55, 65–66 (1992).

This conclusion is consistent with other federal precedent, in which courts have held that a special unanimity instruction is unnecessary where the government alleges only one unified scheme in violation of the federal mail and wire fraud statutes codified at 18 U.S.C. §§ 1341 and 1343 (2006) (prohibiting use of mails or interstate wires in furtherance of a "scheme or artifice to defraud"). *See United States v. Frazin*, 780 F.2d 1461, 1468 (9th Cir.1986) (concluding that trial court "did not err in failing to give a special unanimity instruction regarding the specific acts constituting [a] scheme" where the "indictment alleged one unified scheme to defraud."); *accord, United States v. Wiener*, 127

F.Supp.2d 645, 651 (M.D.Pa.2001) ("the existence of a wire fraud charge does not necessitate a specific unanimity charge").

 The trial court's failure to provide a special unanimity instruction with respect to appellant's theft charge, however, was error.[9] Nevertheless, because this claim was not preserved at trial, "it is not enough to show that the evidence, relevant to a single count, reveals two or more incidents which might be sufficiently separate to warrant, if requested, a special unanimity instruction. Rather, appellant must show that the lack of a unanimity instruction jeopardized the fairness and integrity of his trial." *McKinnon v. United States*, 644 A.2d 438, 441 n. 6 (D.C.1994) (internal quotations and alterations omitted) (finding no plain error where defendant failed to object to the lack of a special unanimity instruction at trial); *accord, Howard v. United States*, 867 A.2d 967, 974–75 (D.C.2005); *Green v. United States*, 544 A.2d 714, 715 (D.C.1988).

Appellant cannot meet this standard given the exhaustive evidence presented at trial supporting each incident of theft, which took the form of banking records, video recordings, still-shots and witness testimony. *See Shivers*, 533 A.2d at 261 n. 7 (noting that "[t]he apparent prevailing practice in the federal courts is to find no 'plain error' so long as evidence as to each incident is sufficiently strong to defeat a motion for a directed verdict of not guilty as to that incident"). Indeed, appellant never contested having committed the withdrawals in question, merely placing at issue his subjective intent. *Cf. Davis v.*

---

9. "Where one charge encompasses two separate incidents, the judge must instruct the jury that if a guilty verdict is returned the jurors must be unanimous as to which incident or incidents they find the defendant guilty." *Scarborough v. United States*, 522 A.2d 869, 871 (D.C.1987) (en banc) (quoting *Hawkins v. United States*, 434 A.2d 446, 449

(D.C.1981)). In this case, each of appellant's individual unauthorized transfers of $250 or more encompassed a separate incident of theft. *See* D.C.Code § 22–3211(a)(2); *see also* Redbook, No. 5.300. Accordingly, a special unanimity instruction was required for the theft count. *Scarborough*, 522 A.2d at 871.

 

*United States,* 448 A.2d 242, 243 (D.C. 1982) (finding the absence of a unanimity instruction plainly erroneous where defendant denied having possessed two different envelopes of marijuana). Lastly, given the trial court's issuance of a general unanimity instruction and the brief deliberation that took place, we deem the risk of a non-unanimous verdict to have been extremely remote. *See Shivers,* 533 A.2d at 263 n. 13 ("a general unanimity instruction [is] sufficient to insure a unanimous verdict 'except in cases where the complexity of the evidence or other factors create a *genuine* danger of jury confusion'") (quoting *United States v. Schiff,* 801 F.2d 108, 114–15 (2d Cir.1986)); *Shivers,* 533 at 263 n. 14 (noting that the "robust intuition and good common-sense of jurors has been trusted to apply the standard unanimity charge to circumstances where special unanimity problems lurk") (internal quotations omitted).

## IV.

For the foregoing reasons, we affirm appellant's convictions.

*So ordered.*