**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Javier VARGAS–RIOS,
Defendant-Appellant.**

**No. 79–1126.**

United States Court of Appeals,
Ninth Circuit.

Sept. 27, 1979.

Rehearing Denied Nov. 20, 1979.

Lawrence A. Callaghan, Goldstein & Phillips, San Francisco, Cal., for defendant-appellant.

Jo-Lynne Lee, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before MERRILL and SNEED, Circuit Judges, and REAL*, District Judge.

SNEED, Circuit Judge:

Defendant-appellant Javier Vargas-Rios appeals from his district court convictions of 21 U.S.C. § 841(a)(1), distribution of heroin, and 21 U.S.C. § 846, conspiracy to distribute heroin. Appellant's two codefendants each pleaded guilty to single counts of conspiracy. At the close of the government's case, appellant moved for a judgment of acquittal pursuant to F.R.Crim.P. 29(a), but the motion was denied. On January 4, 1979, the jury found appellant guilty on both counts of the indictment. Appellant then renewed the motion for judgment of acquittal under Rules 29(a) and 33. It was again denied. Thereupon, appellant was sentenced to custody for three years. Sentence was suspended except for 120 days, which were to be served in a community treatment center. A special parole term of three years was also imposed.

Appellant has raised numerous issues on appeal which strike at various aspects of the process by which he was convicted. These are as follows:

(1) Did the district court err in denying appellant's motions for acquittal?

(2) Did the district court err in denying appellant's motion to dismiss the indictment because of inaccurate information presented to the grand jury?

(3) Did the district court err in instructing the jury concerning how and when the acts and declarations of coconspirators could be considered in determining appellant's guilt?

(4) Did the district court err in denying appellant's motion to strike the array because of comments of a single prospective juror during voir dire?

(5) Did prosecutor prevent one of appellant's codefendants from testifying and make inflamatory and misleading remarks to the jury, thus depriving appellant of a fair trial?

(6) Did prosecutor's errors in opening and closing arguments deprive appellant of a fair trial?

We hold that the district court did not err and that the appellant was not deprived of a fair trial. Therefore, we affirm.

I.

FACTS

The facts of this case reveal the dreary and repetitive pattern of the sale of drugs to law enforcement officers, the "bust," the prosecution and conviction of the seller and his confederates, and an appeal.

On October 30, 1978, William Ruzzamenti, an undercover agent for the Drug Enforce-

---

* Honorable Manuel L. Real, United States District Judge for the Central District of California, sitting by designation.

ment Administration, received a message to meet Amodor Barajas-Delgado (Barajas) at Kerry's Restaurant in San Francisco. Ruzzamenti was accompanied to Kerry's by a state narcotics officer. At Kerry's, Barajas offered to sell 14 ounces of Mexican heroin for $23,000, 11 ounces of which were to be supplied by "his man." The agents requested a sample. Barajas made a phone call and then told the agents that "his man" would deliver the sample. Fifteen minutes later, appellant arrived at Kerry's in a black and white Chevrolet, accompanied by Eliseo Pena-Alvarado (Pena), who entered Kerry's while appellant remained in the car. Barajas and Pena conversed privately, after which Barajas offered the agents a sample of heroin. It was agreed to complete the exchange at the BART station on 16th and Mission Streets in San Francisco. Upon leaving Kerry's, Barajas and Pena talked briefly with appellant and then drove away in a green Toyota. Appellant followed in the Chevrolet.

One hour later the agents and Barajas met at the BART station. Barajas counted the $23,000 tendered by the agents and then spoke with Pena who left immediately thereafter and was observed walking toward the Chevrolet in the company of appellant. An agent, charged with surveillance duties, noticed that Pena and appellant were "looking all around very intently in occupied vehicles in the area." Meanwhile, Barajas, apparently suspecting a trap, insisted they move to another location to conclude the transaction. The agents agreed. Barajas, driving the green Toyota, traveled by a circuitous route to a location on Capp Street. The agents followed. Appellant and Pena in the Chevrolet took a more direct route to a spot one block from where Barajas stopped.

Barajas, after being satisfied that no police had followed him, crossed the street and briefly spoke with Pena, who then returned to the Chevrolet where appellant was waiting. Barajas told the agents that Pena had gone for the heroin. Pena was seen to walk up to the passenger side of the Chevrolet, reach inside, and remove a brown paper bag. Appellant remained in the driver's seat. Pena took the bag, which contained the heroin, to the agent's car, whereupon Pena and Barajas were arrested.

Appellant was arrested in the Chevrolet from which it was not possible to see the arrest of Barajas and Pena. Upon being advised that he was under arrest appellant stated: "I don't know anything about it, I'm just giving a friend a ride." Appellant's fingerprints were not found on the brown paper bag.

Each defendant was advised of his rights pursuant to *Miranda*. Thereafter, appellant merely repeated his earlier statement to the effect that he was giving a friend a ride and knew nothing "about it."

## II.

### APPELLANT'S MOTIONS FOR ACQUITTAL

■ The jury found appellant conspired to distribute heroin and did distribute heroin. The appellant continues to insist as he did from the moment of his arrest that he was only an unknowing chauffeur. Our role in reviewing a jury finding is very small. Jury verdicts must be upheld, as the appellee insists, when the reviewing court finds there was sufficient relevant evidence to permit a rational conclusion by the jury that the accused was guilty beyond a reasonable doubt. *United States v. Nelson*, 419 F.2d 1237, 1242 (9th Cir. 1969). See *United States v. Friedman*, 593 F.2d 109, 115 (9th Cir. 1979); *United States v. Rosales*, 584 F.2d 870, 872 (9th Cir. 1978). The evidence against appellant easily reaches the required level.

The numerous appearances of the appellant during the course of the negotiations and his obvious utility to the entire enterprise distinguishes this case from *United States v. Weaver*, 594 F.2d 1272 (9th Cir. 1979). Appellant was no mere passenger who contributed nothing to the conspiracy. The relevant evidence indicates that he performed a quite necessary function in the enterprise. Nor was he merely a paid chauffeur charged with possession of heroin

with respect to which his employer was also charged as in *United States v. Gardner*, 475 F.2d 1273 (9th Cir. 1973). Relevant evidence indicates the appellant's role in the illegal transaction was substantial, not insignificant and innocent. Such evidence also distinguishes this case from *United States v. Martinez*, 514 F.2d 334 (9th Cir. 1975). The jury rationally could find beyond a reasonable doubt that appellant conspired to distribute and did distribute heroin—that he was more than a mere chauffeur who knew not what Barajas and Pena were doing.

## III.

### INACCURATE INFORMATION PRESENTED TO GRAND JURY

██ Appellant, prior to trial, unsuccessfully sought to quash the indictment on grounds that a prosecuting witness had misstated certain evidence to the grand jury. At the completion of the prosecution's case, the motion was renewed, but again it was denied.

The misstatements were made by Agent Ruzzamenti who contends that they were unintentional and innocent. Appellant does not contend otherwise. The specific misstatements were:

(1) Vargas-Rios met with Barajas at the BART station. (2) Vargas-Rios and Pena conversed with Barajas at one point along the way to Capp Street. (3) Pena went into the car to get the bag of heroin. (4) Vargas-Rios did not make a post-arrest statement. (5) Vargas-Rios and Pena drove in the same direction as Barajas and the undercover agents on the way to Capp Street.

We agree with the comment of the trial judge with respect to these misstatements: "It is not particularly praiseworthy but I don't think it is enough for me to act to dismiss the indictment at this point." That sums it up nicely.

Appellant asserts that the misstatements prejudiced him and that had they not been presented no indictment would have been returned. Without the misstatements appellant insists there was insufficient evidence to indict.

We disagree. In *United States v. Fox*, 425 F.2d 996, 1001 (9th Cir. 1970), we held:

A decision to quash an indictment because of the admission of incompetent evidence *lies in the sound discretion of the trial court.* (citations omitted) (emphasis added).

This is not a case in which dehors the misstatements there was a complete absence of evidence presented before the grand jury. *See United States v. Romero*, 585 F.2d 391 (9th Cir. 1978), *cert. denied*, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979); *United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972); *United States v. Costello*, 221 F.2d 668 (2d Cir.), *aff'd*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

Under the circumstances of this case, *United States v. Kennedy*, 564 F.2d 1329 (9th Cir. 1977) *cert. denied*, 435 U.S. 944 (1978), is controlling. There we said:

We believe that the rule to be distilled from the authorities . . . must be that only in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to the grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury.

564 F.2d 1329, at 1338.

The prosecution in this case cannot be charged with such misconduct.

## IV.

### JURY INSTRUCTIONS REGARDING DECLARATIONS OF COCONSPIRATORS

██ Appellant in a pretrial motion sought to bar admission of statements of coconspirators prior to proof of the existence of the conspiracy and the appellant's membership therein. The motion was denied. The district court gave, however, the following instruction to the jury before the introduction of any evidence:

" . . . This is a case in which the government has charged a conspiracy. A conspiracy is, to put it very briefly, an unlawful agreement between people or an agreement to do something unlawful for a lawful purpose. And the defendant is accused of having been a member of the conspiracy.

If the government proves that there was a conspiracy, then the defendant could be charged with the responsibility for what other people in the conspiracy said and did. But the government must prove that conspiracy before you may consider what other people in this alleged conspiracy did or did not do.

Unfortunately, these kinds of cases can't be presented to a jury in a very neat package. It is possible that in this case there will be some evidence that will come into the record about what other people, not the defendant, but other people did or said. But you may not hold that against the defendant, consider it against him, unless and until the government has satisfied you that there was a conspiracy. Otherwise, the only evidence that you can consider is what the defendant did or said or was seen to have done.

I will remind you about that again, but I just wanted to give you that initial caution, that you must be very careful about how you treat the evidence about what other people said or did unless and until the government has established to your satisfaction that there was a conspiracy in which this defendant was a knowing and intentional partner." (CR 125–126.)

Appellant expressed dissatisfaction with this instruction on the ground that whether sufficient independent evidence had been presented to establish a conspiracy and that appellant was a member thereof was a determination the court rather than the jury, must make. The district court agreed that it would make that determination and during the course of the trial would indicate to the jury that it could then consider the coconspirators' statements. It failed, however, to so indicate to the jury during the course of the trial. Quite understandably,

counsel for appellant did not request such an indication from the court. Counsel, however, was permitted a continuing objection to all hearsay declarations of the coconspirators.

Finally, at the close of the evidence the jury was charged as follows:

" . . . One who willfully joins an existing conspiracy is charged with the same responsibility as if he had been one of the originators or instigators of the conspiracy. In determining whether a conspiracy existed, you should consider the actions and declarations of all of the alleged participants. However, in determining whether the defendant was a member of the conspiracy, if any, the jury should consider only his actions and statements. He cannot be bound by the acts or declarations of other participants unless it is established that a conspiracy existed and that he was one of its members.

Now whenever it should appear to you beyond a reasonable doubt from the evidence in the case that the conspiracy did exist and that the defendant was one of its members, then the statements thereafter knowingly made and the acts thereafter knowingly done by any person also found to be a member may be considered by you as evidence in the case as to the defendant found to have been a member." (CR 389–90.)

As we understand the appellant's argument, he contends that the introduction of hearsay declarations of coconspirators should be deferred until the trial court is satisfied that there exists a conspiracy and that the defendant was one of its members. Only thereafter should hearsay declarations of coconspirators be introduced and admitted.

There is a certain logic in the appellant's position. It is true that in order to invoke Rule 801(d)(2)(E), F.R.Evid., "there must be, independent of the [hearsay] statements, (1) evidence that the conspiracy existed and (2) at least slight evidence connecting the defendant with it." *United*

*States v. Fried,* 576 F.2d 787, 793 (9th Cir. 1978). It does not follow, however, that invariably the evidence sufficient to make available the hearsay evidence rule exception set forth in Rule 801(d)(2)(E) must precede the introduction of the hearsay statements of the coconspirators. The admission of such statements prior to establishing the circumstances making their admission proper imposes upon the prosecution the burden of establishing expeditiously such circumstances. Failure to so establish requires that the statements be stricken.

The instructions set forth above indicate an awareness on the part of the district court of this requirement. Moreover, it is clear that in the course of the trial evidence sufficient to invoke Rule 801(d)(2)(E) was introduced. No need to strike the statements arose. The district court, it is true, did not inform the jury that such evidence had been received. This was not error. To have done so very likely would have prejudiced the appellant. Perhaps the district court should have informed appellant's counsel out of the presence of the jury when it considered that such evidence had been received. However, we are not prepared to hold that the failure to do so in this instance is reversible error.

## V.

### DISTRICT COURT'S FAILURE TO STRIKE THE ARRAY

■ This contention of the appellant borders on the frivolous. It appears that during the jury voir dire, one prospective juror was asked if he would have any hesitancy in sitting on the case as a fair and impartial juror. He replied: "I am, truthfully. If [the appellant] is selling drugs, I say lock him up and throw the key away." The court excused the individual but denied appellant's motion to strike the array.

Appellant contends the statement so tainted the array as to require that it be struck. We disagree. The remark contained no reference to the defendant's guilt other than to say that *if* he were guilty, he should be imprisoned. This was a candid response of some value to appellant. It provides no basis for asserting that the entire array might have been prejudiced. We must remember that those called to serve as jurors are independent men and women each with a mind of his or her own. To assume that each is infinitely malleable by the prosecutor and judge is to repudiate common experience.

## VI.

### PROSECUTORIAL CONDUCT REGARDING PROSPECTIVE DEFENSE WITNESS

■ Relying on *United States v. Morrison,* 535 F.2d 223 (3d Cir. 1976), appellant contends his Sixth Amendment rights were violated by the prosecutor's reference to the possibility of a prosecution for perjury if Pena committed perjury in his contemplated testimony, the substance of which presumably would have been exculpatory with respect to the appellant. The facts on which this contention rests are as follows.

During Pena's guilty plea on December 27, 1978, Pena made statements which, while incriminating Barajas, exonerated appellant. In his pretrial memorandum, counsel for appellant indicated that the prosecutor had demanded that Pena not testify against the government, as a condition for accepting the guilty plea. At Pena's change of plea, the prosecutor denied any such condition had been made. At appellant's request, the court conducted an examination of Pena on the question. During the examination the prosecutor indicated she had told Pena's counsel "I might not be very happy if [Pena] took the stand and perjured himself." (R.T. 61.) Pena's counsel stated that he did not wish to put Pena in a position where he had to convince the government and the court of the appellant's innocence. Pena, counsel asserted, feared possible government retribution, possibly in the form of a longer recommended sentence, if he were not believed. Pena was subpoenaed by the defense but his counsel indicated that if called to the stand he would assert his Fifth Amendment rights.

These facts present a far less compelling pattern than was present in *Morrison*. No concerted effort on the part of the prosecutor to suppress the testimony of a possibly exculpatory witness emerges from these facts. Rather there appears an effort on the part of the defense to obtain Pena's testimony and an effort on the part of his counsel to make certain that any testimony he might give would be harmless to him. The prosecutor quite understandably refused to guarantee Pena complete immunity from any harm his testimony possibly could occasion. As we said in *United States v. Carman*, 577 F.2d 556, 561 (9th Cir. 1978), a defendant has no absolute right to elicit testimony from any witness whom he may desire even if that witness is a codefendant. Adherence to that principle in this case does not violate appellant's Sixth Amendment rights.

## VII.

## PROSECUTORIAL ERRORS

■ Finally, we must address a series of prosecutorial errors that should not have happened. Although they do not warrant reversal of the appellant's conviction, their harmlessness should provide little comfort to the prosecutor. The trivial quality of the errors serves to reinforce our conviction that with but little effort avoidance is possible.

The errors consisted of misstatements while presenting facts both in the prosecutor's opening statement and final argument. In addition, the prosecutor in closing argument suggested to the jury that the appellant could have smelled heroin while it was in the car he was driving even though no evidence to establish this olfactory ability had been offered during the trial. Appellant's counsel was permitted to respond to this suggestion although his objection was denied.

There are extenuating circumstances which justify our "harmless" characterization. Opening statements, for example, are not evidence and the jury was so advised. Also opening statement errors were not re-peated in the final argument although a different minor deviation from the evidence occurred in the closing argument. Finally, the argument that appellant was a coconspirator because he could have smelled the heroin was made subject to rebuttal. Therefore, we conclude the errors were harmless. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

AFFIRMED.

MERRILL, Circuit Judge, dissenting:

I would reverse for failure of the district court to grant appellant's motion for acquittal. I find no sufficient evidence connecting appellant to the narcotics sale on October 30, 1978, or to a narcotics conspiracy.

Barajas and Pena were the principal conspirators. Pena delivered to Barajas, who then sold to the agents. Three rendezvous points were involved in the sale: Kerry's Restaurant, where the agreement of sale was reached between Barajas and the agents; the BART station, where delivery was to be made but which was then felt by Barajas to be unsafe; Capp Street, where delivery ultimately was made followed by arrest. Appellant's sole function was to drive Pena. He drove him to Kerry's Restaurant, followed him when he accompanied Barajas to the BART station, picked him up there and drove him to Capp Street. Appellant never took part in any discussion with Barajas or the government agents. He stayed in his car while Pena dealt with Barajas. The government and the majority opinion find three bits of evidence which it is felt establish that appellant was a knowing participant in the transaction.

1. At the BART station appellant contacted Pena and walked with him back to appellant's car. The opinion states: "An agent, charged with surveillance duties, noticed that Pena and appellant were 'looking all around very intently in occupied vehicles in the area.'" The agent later corrected this statement. He testified: "A. I don't believe that I testified that I saw them looking in and out of automobiles. Q. What did you testify? A. That I observed the

individuals looking at some vehicles which were occupied." The "very intently" seems to have been dropped, whatever that may mean. The extent to which appellant himself participated in looking at vehicles and how he did so is not spelled out.

2. The fact that the paper bag containing the heroin was obtained by Pena by reaching into the passenger's side of appellant's car while appellant stayed in the driver's seat. The bag was in Pena's possession. The fact that it was in the car is not, to me, sufficient to give rise to an inference that the driver of the car knew what was in it.

3. The opinion states: "Appellant was arrested in the Chevrolet from which it was not possible to see the arrest of Barajas and Pena. Upon being advised that he was under arrest appellant stated: 'I don't know anything about it, I'm just giving a friend a ride.'" The construction placed on this by the government, and apparently by the majority of the court, is that appellant spontaneously asserted his innocence without having any way of knowing what he was being arrested for or that Barajas and Pena had been arrested for involvement in a narcotics violation. The conclusion thus is drawn that this spontaneous assertion of innocence was proof of complicity. The record does not bear this out. It states:

"Q. And did you identify yourself as police officers?

A. I did.

Q. Explain he was under arrest?

A. I did.

Q. Did he say anything?

A. He says, 'What is going on? What did I do?'

Q. Anything else?

A. I told him what he was under arrest for.

Q. And he said something like, 'I was just giving a friend a ride. I don't know

anything about a brown paper bag.' Is that a fair summary?

A. He didn't mention a brown paper bag. He said he was driving a friend, right, he didn't know anything about what was happening."

Thus, when appellant made the statement credited to him he had already been told what he was under arrest for. I do not see how he could have been informed of the basis for his arrest without the arresting officer having identified the transaction in which he was felt to have participated. The assertion of innocence seems to me to be wholly consistent with innocence.

The standard for sufficiency of the evidence to establish guilt of conspiracy is the same as that applying to any crime: guilt must be established beyond a reasonable doubt.

In *United States v. Friedman*, 593 F.2d 109, 115 (9th Cir. 1979), this court stated:

"The Government had the burden of proving beyond a reasonable doubt that the conspiracy did exist and that each defendant was a member of the conspiracy charged. *United States v. Peterson*, 549 F.2d 654, 657 (9th Cir. 1977)."

In *United States v. Dunn*, 564 F.2d 348, 356–57 (9th Cir. 1977), we stated:

"Conspiracy in the criminal law, as defined by the relevant statutes, is a crime. Those *knowingly* participating in the conspiracy in any respect or to any degree are guilty of that crime, but their guilt must be established under the same standards applicable to those charged with any other crime—neither more nor less—and the sufficiency of the evidence is subject to the same standards of review."

To the same effect: *United States v. Bracy*, 566 F.2d 649, 659 (9th Cir.), *cert. denied*, 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 109 (1978).[1]

---

1. Some confusion seems to have arisen in this circuit regarding what is sometimes called the "slight evidence rule." *United States v. Dunn, supra*, has given some clarification. There, we said:

"It is sometimes said, as the Government here states in its brief, that ' "[O]nce the

existence of a conspiracy is clearly established, slight evidence may be sufficient to connect a defendant with it",' quoting from *United States v. Knight*, 416 F.2d 1181, 1184 (9th Cir. 1969), which in turn quotes from earlier cases. * * *

* * * * * *

In my judgment this standard was not met and it was error not to grant appellant's motion for acquittal. Upon that ground I would reverse and express no view as to the other points discussed in the majority opinion.

Accordingly, we think it appropriate here to restate the slight evidence rule correctly and as we are reasonably certain that our predecessors intended it: Once the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the *connection is slight*, is sufficient to convict him with knowing participation in the conspiracy."

564 F.2d at 356–57. To the same effect are *United States v. Noah*, 594 F.2d 1303, 1309–10 (9th Cir. 1979); *United States v. Thomas*, 586 F.2d 123, 127 (9th Cir. 1978); *United States v. Kostoff*, 585 F.2d 378, 380 (9th Cir. 1978);

*United States v. Weiner*, 578 F.2d 757, 769 (9th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978); and *United States v. Contreras-Diaz*, 575 F.2d 740, 745 (9th Cir.) *cert. denied*, 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978).

Confusion also exists as to whether this "rule" fixes the standard for establishing guilt or only that for admission of the hearsay declarations of a coconspirator. *Compare United States v. Weiner, supra, with United States v. Fried*, 576 F.2d 787, 793 (9th Cir.), *cert. denied*, 439 U.S. 895, 99 S.Ct. 255, 58 L.Ed.2d 241 (1978).