Walter J. MUNN, Appellant,

v.

UNITED STATES, Appellee.

No. 95–CF–1686.

District of Columbia Court of Appeals.

Submitted May 13, 1997.
Decided Dec. 18, 1997.

Arthur H. Fawcett, Jr., Washington, DC, appointed by this court, was on the brief for appellant.

Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., Lee H. Rubin, and Adam L. Rosman, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY and FARRELL, Associate Judges, and MACK, Senior Judge.

TERRY, Associate Judge:

Appellant was convicted of possession of cocaine with intent to distribute it, in violation of D.C.Code § 33–541(a)(1) (1993). On

appeal he contends that certain remarks made by the prosecutor in his opening statement were improper, in that they were inflammatory and referred to facts that could not be introduced into evidence. We agree that the prosecutor's comments were improper, but because they did not substantially prejudice the defense, we affirm the conviction.

## I

In mid-afternoon on September 11, 1993, four police officers, members of the Sixth District Vice Unit, were in an unmarked car in the 200 block of 43rd Street, N.E. As they drove into an alley, they saw a group of young men loitering near the entrance to a building. Because the police had received complaints from citizens about high drug activity in that area, the officers asked the young men to "move on." As the men walked away, one of the officers, Efrain Soto, noticed a partially opened brown paper bag on the ground about twenty-five feet from where the group had been standing. Looking inside, he saw what appeared to be ziplock bags of crack cocaine. Soto and one of his fellow officers, Homer Littlejohn, suspected that someone would return to retrieve the bag and its contents, so they looked around for a place to conceal themselves, from which they could see if anyone came back for the bag. Officer Littlejohn found an elevated position in a nearby yard from which he had a clear view of the brown bag. He positioned himself there and waited.

About five minutes later, appellant Munn, who had been one of the men in the group that the officers first saw, returned with another man. As Munn picked up the bag and began to walk away, Officer Littlejohn broadcast a general lookout over the radio to the other officers in the area. Littlejohn also saw the other man hand Munn some money; Munn took it and reached into the brown bag. Just at that moment, Officer Soto, who was racing toward Munn and his companion, accidentally kicked a bottle that was lying in the street. Upon hearing the sound of the rolling bottle, Munn and the other man looked up, saw Soto approaching, and immediately began to run, with Soto in hot pursuit. As he ran, Munn dropped the brown bag and later threw down some money that he was holding in his right hand. After pursuing Munn over several fences, Officer Soto caught up with him and placed him under arrest. Another officer recovered the brown bag, which was later found to contain crack cocaine.

Munn testified that he was standing on 43rd Street when the police officers first came up. The officers jumped out of their car and ordered Munn and his companions to spread their hands and lean forward on Munn's car so that they could be searched. After searching him, the officers let Munn go. He left the area but returned a few minutes later to retrieve his car. When he saw Officer Soto coming toward him "off of a garage roof," he ran because Soto "had his pistol out." Munn stated that he did not have anything in his hands or throw anything away.[1] He also denied that he sold, or attempted to sell, crack cocaine to another man.

## II

Appellant claims that on two occasions during his opening statement the prosecutor made comments that were inflammatory, unduly prejudicial, and not based on the facts of the case. The relevant portion of the trial transcript reads as follows, with the challenged comments italicized:

[THE PROSECUTOR]: ... And the evidence that you will hear today will show beyond a reasonable doubt that not only did Mr. Munn possess the cocaine, but that when he had this cocaine, ladies and gentlemen, he intended to distribute it. And by intending to distribute it, ladies and gentlemen, *he was part of that network that we all hear about, that part of that network of distributing drugs to other people [who] need it and who want it.* And by doing that, ladies and gentlemen, he violated the laws of Washington, D.C.

[DEFENSE COUNSEL]: Objection.

---

1. Two defense witnesses, Bernard Johnson and Anthony Henry, testified to the same effect.

THE COURT: To the statement about network?

[DEFENSE COUNSEL]: Yes.

THE COURT: Sustained. Disregard the comment.

The prosecutor then resumed his opening statement, but soon thereafter he made another remark, again italicized, that elicited not only an objection from defense counsel but an immediate interruption from the court:

> [THE PROSECUTOR]: Ladies and gentlemen, *we are here because we worry about Mr. Munn. We worry about people who have seven ziplocks—*
>
> THE COURT: Approach, please.
>
> [DEFENSE COUNSEL]: Objection.

(Bench conference)

THE COURT: I want you to justify why you are arguing to the jury. First of all, you made the comment about this being a network that we all hear about. That is inflammatory. You tell me on the record now, what is the proper basis for that type of argument to the jury?

[THE PROSECUTOR]: First of all—

THE COURT: Well, start with the first one, since I have you up here.

[THE PROSECUTOR]: I didn't mean it to be inflammatory.

THE COURT: It is inflammatory, telling them he is part of a network that we all hear about, drug dealers in the city. That is not difficult to discern, Mr. [Prosecutor].

[THE PROSECUTOR]: It was stricken.

THE COURT: It was an objection that was sustained. There was another objection that you are beginning to argue about how we are all worried about what. State your facts and get out of your opening statement. Do you understand, sir?

[THE PROSECUTOR]: I understand.

\* \* \* \* \*

[DEFENSE COUNSEL]: I am going to make a motion for a mistrial. I do so only to protect the record for Mr. Munn.

THE COURT: This is opening statement. If you want me to say any more to the jury—I am going to sustain the objection to this last comment—and if you want me to say more, I am open to suggestions.

[DEFENSE COUNSEL]: I think that only highlights it.

THE COURT: The motion is denied.

(End of bench conference)

THE COURT: All right. Objection sustained.

Munn now argues that he was denied the right to a fair trial when the prosecutor said that he was "part of that network that we all hear about, that part of that network of distributing drugs to other people," and that "we worry about Mr. Munn."

■■■ When a statement by a prosecutor is assigned as a ground for reversal, "the threshold issue" for this court to decide "is whether the challenged remark was improper." *McGrier v. United States,* 597 A.2d 36, 40 (D.C.1991). Even if it was, a new trial is required only when the defendant suffered "substantial prejudice" as a result. *Williams v. United States,* 483 A.2d 292, 297 (D.C. 1984), *cert. denied,* 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985). Factors to be considered in determining such prejudice are "the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error." *Gaither v. United States,* 134 U.S.App. D.C. 154, 172, 413 F.2d 1061, 1079 (1969); *accord, e.g., Bowman v. United States,* 652 A.2d 64, 70 (D.C.1994). Moreover, the fact that a challenged comment was made " 'not during the trial ... but in an opening statement,' " and was not repeated later, may itself tend to mitigate any prejudice. *Owens v. United States,* 497 A.2d 1086, 1092 (D.C.1985), *cert. denied,* 474 U.S. 1085, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986) (citing *Frazier v. Cupp,* 394 U.S. 731, 735, 89 S.Ct. 1420, 1422–23, 22 L.Ed.2d 684 (1969)). Finally, in deciding whether there was substantial prejudice, the assessment of the trial judge "is entitled to some reliance since only he had the opportunity to appraise the effect of the remarks in their setting." *Jenkins v. United States,* 374 A.2d 581, 585 (D.C.) (citation omitted), *cert.*

*denied,* 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 182 (1977).

 There can be no serious doubt that the prosecutor's remarks were improper. Munn correctly maintains that the government had no evidence that he was part of a conspiracy or "network," nor did it even attempt to prove that he was. The government does not expressly concede impropriety, but it admits in its brief that the prosecutor's comments were "inartfully phrased" and "better left unsaid." We agree. The question for us, however, is whether they were so improper as to require reversal of Munn's conviction. We think not.

In the three cases on which Munn principally relies, the convictions were affirmed despite improper remarks by the respective prosecutors during their opening statements. *Settles v. United States,* 615 A.2d 1105, 1113–1114 (D.C.1992); *Owens v. United States, supra,* 497 A.2d at 1091–1092; *United States v. Vargas–Rios,* 607 F.2d 831, 838 (9th Cir. 1979).[2] In each case the reviewing court concluded that the comments did not substantially prejudice the defense. In the case at bar the trial judge came to the same conclusion, and, as we have said, his evaluation is entitled to some deference because he was there and we were not. The judge did offer to give a curative instruction to the jury, but defense counsel declined the offer because he thought it would draw attention to the comments.

The government, arguing for affirmance, relies on our recent decision in *Buergas v. United States,* 686 A.2d 556 (D.C.1996). In *Buergas* certain remarks made in the prosecutor's opening statement were challenged on appeal. We agreed that they were "improper, but isolated, and thus did not create substantial prejudice to appellant." *Id.* at

560 (citation omitted). The prosecutor in that case said in her opening statement:

> Plain and simple, the government's evidence is going to show that [the defendant] is a drug dealer, and I'm going to be coming back to you at the end of the case and ask you to tell him by your verdict of guilty that drug dealing is a business that this community will not and cannot tolerate.

*Id.* at 559. We held that these comments were improper because they urged the jury to return a verdict based on "emotion or community concerns, rather than evidence of guilt, or the lack of it." *Id.*[3] But also in *Buergas,* as in the instant case,

> the court denied a request for mistrial, but admonished counsel not to pursue that line of argument. After further opening statements, presentation of six witnesses [ten in the case at bar], and closing arguments, this theme—sending a message to the community—was not repeated to the jury. In instructing the jury, the judge directed them to decide the case only on the evidence presented and reiterated that opening and closing statements of counsel were not evidence.

*Id.* We concluded that the trial judge's prompt action and the strength of the government's evidence were sufficient to dispel any prejudice flowing from what the prosecutor said. We reach the same conclusion here.

The impropriety in the present case, while it should never have occurred, was not as serious as that in *Buergas.* Moreover, immediately after the prosecutor said that "we worry about Mr. Munn," the trial judge promptly called both counsel to the bench and told the prosecutor in no uncertain terms to stop this line of argument. The chastened prosecutor never again mentioned either a "network" or "worry" in relation to Mr.

---

**2.** In *Settles* the prosecutor referred to the defendant as a "self-centered coward" and told the jury that the murder with which he was charged was "especially tragic" because the victim was a twelve-year-old child. In *Owens* the prosecutor inaccurately stated that one of the three assailants had said, "You know what this is, give it up," even though there was no evidence that the words "give it up" were spoken by any of them. In *Vargas–Rios* the prosecutor made misstate-

ments of fact in both his opening statement and his closing argument.

**3.** We note that the prosecutor in *Buergas* also urged the jury to "tell" the defendant something, a type of exhortation that we have repeatedly condemned. *See, e.g., Bowman v. United States, supra,* 652 A.2d at 71.

Munn. Furthermore, at both the beginning and the end of the trial, the judge instructed the jury that the opening and closing statements of counsel were not evidence. The judge's quick and decisive action went a long way toward alleviating any possible prejudice.

Finally, the evidence of guilt was strong. Officer Littlejohn identified Munn in court as the person who returned to pick up the stash and attempted to sell drugs to another man. Officer Soto identified Munn as the man with the bag of crack cocaine in his hand whom he chased and eventually arrested. The police recovered both the cocaine and the money that Officers Littlejohn and Soto saw Munn carrying.

We hold, therefore, that although the prosecutor's remarks in his opening statement were improper, the defense was not substantially prejudiced. Appellant's conviction is therefore

*Affirmed.*

MACK, Senior Judge, concurring:

I agree with my colleagues that the prosecutor's opening remarks (relative to a "network" of drug distribution) were improper. I agree with the trial judge, who sustained an objection to those remarks as being "inflammatory."

Moreover, in this court, we all agree with Mr. Munn that "the government had no evidence that he was part of a conspiracy or 'network'...." Majority Op. at 1242. As to whether the government made any "attempt to prove that he was," the record leaves me somewhat ambivalent. Certainly the prosecutor, having been sternly advised by the trial judge to state a factual basis for the inflammatory opening argument, produced no direct evidence in that regard.[1] I note, however, that in closing arguments, the prosecutor did rely in part upon the testimony of an "expert witness" who testified as to the usual pattern of drug distribution. Nevertheless, because the expert expressly disclaimed any knowledge of the facts of this

case, and in view of the protective instructions given by the trial court, I join my colleagues in holding that Mr. Munn was not substantially prejudiced thereby. *Cf. Russell v. United States,* 701 A.2d 1093 (D.C. 1997).

---

1. Mr. Munn was arrested after he was observed returning to the scene of a "stake-out" to retrieve his parked car after having previously been searched together with a group of "loitering" men and ordered to "move on" without the car (a fact which a vice squad officer did not mention on direct examination but did not dispute on cross).